**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHAWN RIGNEY and KYLE ADAMS,
individually and on behalf of all others
similarly situated,

        CASE NO.:   8:19-cv-01432

      Plaintiffs,

v.

TARGET CORPORATION,

      Defendant.

_____/

**TARGET CORPORATION'S DISPOSITIVE MOTION TO DISMISS**
**CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

       Defendant Target Corporation ("Target"), by and through undersigned counsel, hereby files this Dispositive Motion to Dismiss ("Motion") the Class Action Complaint ("Complaint") filed by Plaintiffs Shawn Rigney ("Rigney") and Kyle Adams ("Adams" and together with Rigney, "Plaintiffs") on behalf of themselves and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) and on the grounds stated in the incorporated memorandum of law.

## INTRODUCTION

       This case is the latest in which health plan beneficiaries have sought to impose substantial penalties on their respective health-plan sponsors based upon the plan sponsors' alleged technical noncompliance with the notice requirements of COBRA.  In this case, as in the others, the Complaint includes a single count in which the named plaintiffs allege that the plan sponsor, Target, violated Section 606(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") by providing Plaintiffs with a notice of their right to elect continuation healthcare

coverage (the "Target COBRA Notice") that did not fully comply with the purported requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

Plaintiffs' Complaint should be dismissed for two primary reasons. First, Plaintiffs in this case lack standing under Article III of the Constitution because they have not sufficiently alleged that the purportedly defective notice caused them to suffer a concrete injury. Furthermore, the injuries that Plaintiffs do allege, in addition to resting upon speculative and conclusory allegations, are not fairly traceable to Target or the Target COBRA Notice.

In addition, the Complaint fails to state a plausible claim for relief because the Target COBRA Notice substantially complies with the applicable laws and regulations, which is apparent from the four corners of the Complaint and the exhibits attached thereto.

Plaintiffs also fail to join an indispensable party, Alight Solutions, LLC ("Alight"), the party actually responsible for creating and distributing the Target COBRA Notice. For these reasons, the Complaint should be dismissed.

## MEMORANDUM OF LAW

### LEGAL STANDARD

Target moves to dismiss the Complaint pursuant to Rules 12(b)(1), (b)(6), and (b)(7) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(1) challenges a district court's subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty*, 501 F.3d 1244, 1251 (11th Cir. 2007). Plaintiffs bear the burden of establishing that they have standing to bring the claim asserted in the Complaint. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Unlike a motion to dismiss under Rule 12(b)(6), courts may consider facts outside the pleadings and "no presumptive truthfulness attaches to [a] plaintiff's allegations" when evaluating whether the court has subject matter jurisdiction over a claim.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).[1]

With respect to the Rule 12(b)(6), it is settled that "to survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a complaint must contain "factual allegations [that] are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Garcia-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotation marks omitted).

Under this standard, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. While it is true that a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, the plaintiff's obligation to provide the grounds for the entitlement to relief requires more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. Factual allegations must be enough to raise a right to relief above the speculative level, and it is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id*.

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see*

---

[1] "We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

also *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (alteration in original) (citation omitted).

Finally, dismissal under Rule 12(b)(7) for failure to join an indispensable party is appropriate "where the court cannot accord complete relief among the existing parties, prejudice would result to the absent party's ability to protect itself in the instant action, or the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014). Courts consider the following four, non-exhaustive factors enumerated in Rule 19(b) when determining whether to proceed without an absent party: "(1) the extent to which a judgment might prejudice the absent party or existing parties, (2) the extent to which any prejudice can be lessened by shaping the relief or taking other protective measures, (3) whether a judgment would be adequate despite the required party's absence, and (4) whether the plaintiffs would have another adequate remedy were the action dismissed." *Id.*

When the allegations contained in the Complaint are analyzed under the foregoing standards, it is apparent that Plaintiffs fail to satisfy the requirements of Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. As a result, the Complaint should be dismissed in its entirety.

## ARGUMENT AND AUTHORITIES

## I.   The Complaint Fails to Establish that Plaintiffs have Standing under Article III of the Constitution.

It is well-settled that to maintain a claim, Plaintiffs must possess standing under Article III of the Constitution. *Lujan*, 504 U.S. at 560–61. To establish what the United States Supreme Court has frequently described as the irreducible constitutional minimum of standing, it is

Plaintiffs' burden to demonstrate: (1) a concrete and particularized injury in fact, (2) "a causal connection between the injury and conduct complained of," and (3) a likelihood that the injury will be redressed by a decision in their favor. *Lujan*, 504 U.S. at 560–61.  Moreover, Supreme Court precedent is clear—it is Plaintiffs' burden to establish the requisite components of standing, and, at a minimum, Plaintiffs "must clearly . . . allege facts demonstrating each element." *Id*. (internal citation omitted).

Simply put, the allegations in the Complaint, even when accepted as true, fail to establish the elements of Article III standing.  As a result, Plaintiffs' claims should be dismissed.

**A.     The allegations in the Complaint fail to identify a particularized injury in fact.**

Plaintiffs attempt to identify a particularized injury by asserting that Plaintiffs and the putative class members suffered two purported injuries, (1) an informational injury, and (2) a tangible economic loss.  As to the purported informational injury, the Complaint asserts that the Target COBRA Notice did not contain all information required by COBRA and the alleged omissions give rise to an information injury that confers Plaintiffs with standing to sue to enforce the relevant regulations.  Compl. ¶ 26.  With respect to the claimed economic injury, the Complaint asserts that Plaintiffs "suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to the Defendant's deficient COBRA election notice."  *Id*. at ¶ 27.  Both of these conclusory statements are insufficient to establish Plaintiffs' standing under Article III.

The Supreme Court's decision in *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), articulates the standard Plaintiffs must satisfy to establish the alleged informational injury that Plaintiffs attempt to describe in the Complaint.  At the outset,

the alleged informational injury must be "concrete."  *Id*. at 1548.  While intangible harms, like a statutory right to receive certain information, may constitute a concrete injury, a bare allegation of a statutory violation alone is not sufficient to satisfy the injury-in-fact requirement.  *Id*. at 1549.  Rather, to establish informational standing, a plaintiff must plausibly connect the harm a statute seeks to prevent with a real, concrete injury—or, demonstrate that the violation poses a "material risk" of real harm.  *See id*. at 1550 ("[The plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

Applying these standards, the Eleventh Circuit has declared that "the requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation.  A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court."  *Nicklaw v. Citimortgage, Inc.*, 893 F.3d 998, 1003 (11th Cir. 2016) (citation omitted).

The Supreme Court's decision in *Federal Election Commission v. Atkins* illustrates the type of concrete injury that must be present in order to satisfy the informational standing inquiry. In the *Atkins* case, the Supreme Court held that the inability of voters to obtain information regarding campaign-related activities, specifically a list of donors to the American Israel Public Affairs Committee ("AIPAC"), presented the type of concrete injury that would give rise to informational standing.  524 U.S. 11, 21 (1998).  The Court concluded that an "informational injury" existed in *Atkins* because the inability to obtain the information "directly related to voting, the most basic of political rights[.]"  *Id*. at 24–25.  Importantly, the basis for the *Atkins* case was the outright refusal of the Federal Election Commission to classify AIPAC as a political committee, as the plaintiffs had requested, which would have then required AIPAC to disclose

6

the information sought. *Id*. at 15–16; *see also Perry v. Cable New Network, Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017) (holding that violation of the Video Privacy Protection Act caused harm by virtue of an violating the plaintiff's right of privacy, which has been established by United States' courts since the early 1900s).

The facts before this Court are markedly different from those in which other courts found that the plaintiffs had satisfied their burden to establish standing under Article III by demonstrating an informational injury. Here, Plaintiffs have not alleged that Target or Alight, as the COBRA benefits administrator, failed to provide Plaintiffs with a COBRA continuation coverage notice. Instead, Plaintiffs acknowledge that a notice was provided, but assert that it failed to strictly comply with the requirements of 29 C.F.R. § 2590.606-4(b)(4).

As discussed below, strict compliance with the above-referenced regulations is not required. Rather, the DOL itself has stated that it will apply a good-faith standard in determining whether notices issued by COBRA administrators satisfy the requirements of COBRA. It is apparent that the Target COBRA Notice more than satisfies this standard. Moreover, Plaintiffs' conclusory allegation that they suffered an injury simply by virtue of allegedly not receiving all the information enumerated in 29 C.F.R. § 2590.606-4(b)(4), without more, does not sufficiently establish the type of concrete harm necessary to give rise to Article III standing. This is particularly true given that Plaintiffs have not even attempted to allege (and presumably cannot allege) that Plaintiffs endeavored to exercise their right to elect continuing health care coverage but were unable to do so due to some allegedly confusing or incomplete aspect of the Target COBRA Notice.

The allegations in the Complaint demonstrate that Plaintiffs received the requisite notice and that the notice substantially complies with the requirements of COBRA. Furthermore, the

7

Complaint is devoid of any facts that would connect the alleged deficiencies in the Target COBRA Notice to Plaintiffs' failure to enroll in COBRA.  Thus, Plaintiffs' allegations are nothing more than conjecture and fail to identify the type of "concrete" injury that must be present to support a finding that Plaintiffs have standing due to an informational injury.

**B.      Plaintiffs' alleged economic injury lacks a causal connection to the Target COBRA Notice and cannot be redressed by a decision in Plaintiffs' favor.**

In addition to the alleged informational injury, Plaintiffs attempt to establish the existence of a tangible economic injury by asserting that they lost their insurance coverage after the termination of Rigney's employment with Target.[2]  *See* Compl. ¶ 27.  This allegation falls short as well because Plaintiffs fail to establish a causal connection between the alleged injury and the Target COBRA Notice.

Even accepting the allegations in the Complaint as true, none of the information that Plaintiffs allege was absent from the Target COBRA Notice caused Plaintiffs' alleged loss of insurance coverage.  First, the Target COBRA Notice not only advises Plaintiffs how to enroll in COBRA coverage, it also provides information on alternatives to enrolling in COBRA:

> This notice contains important information about your right to continue your Target health coverage, as well as other health coverage alternatives that may be available to you through the Health Insurance Marketplace at www.HealthCare.gov or by calling 1-800-318-2596.
>
> ***
>
> There may be other coverage, more affordable coverage options for you and your family through the Health Insurance Marketplace, Medicaid, or other group health plan coverage options (such as a spouse's plan) through what is called 'special enrollment period', even if the plan generally does not accept late enrollees.

Target COBRA Notice at 1.

---

[2] Plaintiffs allege that Adams is Rigney's partner and was covered under Rigney's health plan.  *See* Compl. ¶ 29.

Plaintiffs ignore this information in the Complaint and simply conclude that the omission of additional information caused Plaintiffs to lose coverage.  Yet, noticeably absent from the Complaint is an allegation that Plaintiffs attempted to timely exercise their right to enroll in COBRA, but were unable to do so because, for example, the number provided was incorrect or that Plaintiffs did not understand that they had a right to enroll in COBRA or to seek an alternative to COBRA continuing coverage.

In essence, Plaintiffs have attempted to identify alleged defects in the Target COBRA Notice and conclude that those alleged omissions were necessarily the reason that Plaintiffs failed to enroll in COBRA.  However, the Court is not required to accept (and should not accept) Plaintiffs' conclusory allegation that they lost coverage due to the failure to receive the information the Complaint identifies where the attachments to the Complaint contradict the core allegations in the Complaint.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general conclusory allegations.  Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").  And without any factual allegations to connect the dots between the alleged omissions in the Target COBRA Notice and Plaintiffs' loss of coverage, Plaintiffs have failed to demonstrate an injury in fact.

The foregoing also demonstrates that Plaintiffs' alleged harms are not fairly traceable to any conduct by Target.  The Target COBRA Notice attached to the Complaint contains the information necessary to both (1) inform Plaintiffs that they had a right to seek COBRA benefits, and (2) explain to Plaintiffs how to elect COBRA continuation coverage.  Their failure to do so was the result of their own inaction and not the contents of the Target COBRA Notice.

Finally, as discussed below, Target, as the plan administrator, delegated the authority to issue the COBRA notices to Alight and any claim arising out of the alleged failure to provide a notice that strictly complies with the requirements of the Code of Federal Regulations ("C.F.R.") falls on Alight's shoulders, not Target's.

As the foregoing demonstrates, Plaintiffs' Complaint fails to properly allege, because it cannot, any of the three required elements for standing under Article III.  As a result, this Court should dismiss Plaintiffs' claims in their entirety.

## II.     The Complaint fails to state a claim for relief.

The parties do not dispute that 29 C.F.R. § 2590.606-4(b)(4) sets forth the requirements for the COBRA continuation of coverage notices.  In 29 C.F.R. § 2590.606-4(b)(4), there are 14 items that <u>should</u>[3] be included in continuation of coverage notice.  Target has summarized those elements in the chart attached hereto as Exhibit A.

Plaintiffs allege the Target COBRA Notice does not comply with 29 C.F.R. § 2590.606-4(b)(4) because it purportedly does not contain does not include the following:

> (i)     an explanation of how to enroll in COBRA or a physical election form;
>
> (ii)    the address to which payments should be sent;
>
> (iii)   that COBRA coverage may be terminated;
>
> (iv)    an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act; and

---

[3] The Department of Labor's ("DOL") model notice ("Model Notice") does not contain all 14 elements identified in 29 C.F.R. § 2590.606-4(b)(4).  As a result, while it is undisputed that certain information must be contained in the required COBRA notices, there is no requirement that all 14 items be included in a notice in the exact manner as set forth in the C.F.R.

> (v) the name, address, and telephone number of the party responsible under the plan of continuation coverage benefits.

*See* Compl. ¶ 24.  Plaintiffs also allege as a catchall that the Target COBRA Notice is not drafted in a manner calculated to be understood by the average plan participant.  *Id.*

It is clear from the allegations in the Complaint that Plaintiffs believe that the C.F.R. imposes a strict compliance standard on COBRA benefits administrators and that any deviation from the C.F.R. provides any ERISA plan participant with a private right of action for penalties under ERISA.  Plaintiffs are incorrect as both the DOL's published guidelines and the DOL's Model Notice demonstrate that COBRA benefits administrators are not required to strictly comply with the requirements of 29 C.F.R. § 2590.606-4(b)(4).

As Plaintiffs recognize, the Department of Labor Employee Benefits Security Administration ("EBSA") has created a model COBRA notice.  EBSA has also produced the Employer's Guide to Group Health Continuation Coverage under COBRA (the "EBSA Guide"), which describes employers' obligations who are subject to COBRA.[4]  The EBSA Guide expressly states that employers may *use* the model notice, and that the use of the model notice represents "good faith" compliance with COBRA's notice requirements.  *See* EBSA Guide at 5, attached hereto as Exhibit B.[5]  This statement alone clearly indicates that the DOL imposes a good-faith standard of compliance, and not the strict compliance standard advanced by Plaintiffs.

In addition, Plaintiffs appear to take the position that the DOL's Model Notice is the hallmark of compliance with § 2590.606-4(b)(4) and that any deviation from the Model Notice

---

[4] COBRA generally applies to group health plans with more than 20 full time equivalent employees.
[5] The EBSA Guide is publicly available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/an-employers-guide-to-group-health-continuation-coverage-under-cobra.pdf, and this Court may take judicial notice of the EBSA Guide pursuant to Federal Rule of Evidence 201(b).  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.").

supports a claim for penalties under ERISA.  *Id.* at ¶¶ 22–23.  Contrary to Plaintiffs' position, the

instructions to the DOL's Model Notice, which are attached to the Complaint as Exhibit C,

reinforce the conclusion that the DOL imposes a good-faith, rather than a strict compliance,

standard with respect to COBRA election of coverage notices:

> The Department of Labor has developed a model Consolidated
> Omnibus Budget Reconciliation Act of 1985 (COBRA)
> continuation coverage election notice that the Plain *may* use to
> provide the election notice.  To use this notice properly, the Plan
> Administrator must fill in the blanks with the appropriate
> information.  ***The Department considers use of the model election
> notice to be <u>good faith compliance</u> with the election notice
> content requirements of COBRA.  The use of the model notice
> isn't required.***  The model notices are provided to help facilitate
> compliance with the applicable notice requirements.

Compl., Ex. C at 1 (emphasis added).  Thus, the DOL has made it abundantly clear that the use

of the Model Notice is not mandatory, and that "good faith compliance" is all that is required to

fulfill the COBRA notice requirements.

Importantly, the DOL Model Notice itself does not contain all of the information

enumerated in § 2590.606-4(b)(4).  For example, § 2590.606-4(b)(4)(vi) purportedly requires a

COBRA continuation coverage notice to include:

> An explanation of the consequences of failing to elect or waiving
> continuation coverage, including an explanation that a qualified
> beneficiary's decision whether to elect continuation coverage will
> affect the future rights of qualified beneficiaries to portability of
> group health coverage, guaranteed access to individual health
> coverage, and special enrollment under part 7 of title I of the Act,
> with a reference to where a qualified beneficiary may obtain
> additional information about such rights; and a description of the
> plan's procedures for revoking a waiver of the right to continuation
> coverage before the date by which the election must be made[.]

§ 2590.606-4(b)(4)(vi).  Yet, the DOL's own Model Notice does not include that information.

*See* Compl. Ex. C.  The Model Notice also includes items not specifically enumerated in §

2590.606-4(b)(4), including, but not limited to, a physical election form.  *Compare* Compl., Ex. C *with* § 2590.606-4(b)(4).

Although no court has expressly held that a good-faith standard should be applied in determining whether a COBRA benefits administrator complied with the applicable regulations, the court's decision *Martin v. Feeny Chrysler-Dodge of Gaylord, Inc.*, No. 09-12513, 2010 WL 3623206, at *2–*3 (E.D. Mich. Sept. 15, 2010) provides meaningful guidance on that point.

In *Martin*, the parties disputed "what is necessary for an employee to have sufficient information to make an 'informed decision.'"  *Id*. at *2.  In their briefing, the parties cited to cases decided before the May 26, 2014 promulgation of § 2590.606-4(b)(4).  *Id*.  "[T]he parties did not address whether the regulation was intended to be binding or persuasive, and whether it was simply meant to provide guidance to plan administrators as to the information that will allow a covered individual to make a 'meaningful choice,' or whether it is meant to be enforced by the courts in a strict, technical manner."  *Id*.  The court continued, "[i]t is not inconceivable that even if 'binding,' only substantial compliance is required as the otherwise binding case law provided before issuance of the regulation.  . . . Finally, adequate attention also has not been paid to whether the pertinent COBRA provisions are unambiguous, such that the regulation does not supersede the case law as Defendant suggests, pursuant to *Neal v. United States*, 516 U.S. 284, 116 S. Ct. 763, 133 L. Ed. 709 (1996), as clarified by *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 125 S. Ct. 2688, 162 L. Ed. 820 (2005)."[6]  *Id*. at *3.

---

[6] In *National Cable & Telecommunications Association*, the Supreme Court stated, "[t]hus, *Neal* established only that a precedent holding a statute to be unambiguous forecloses a contrary agency construction. That limited holding accorded with this Court's prior decisions, which had held that a court's interpretation of a statute trumps an agency's under the doctrine of stare decisis only if the prior court holding "determined a statute's clear meaning." *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 131, 110 S. Ct. 2759, 111 L.Ed.2d 94 (1990) (emphasis added); *see also Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536–537, 112 S. Ct. 841, 117 L.Ed.2d 79 (1992). Those

Notably, a good faith or substantial compliance standard is consistent with courts' application of other ERISA regulations.  In particular, the Eleventh Circuit has held that when a participant asserts a claim under Section 502(a)(3) of ERISA for failure to provide a full and fair review of a claim for benefits, courts have widely applied a substantial compliance standard in determining whether an administrator's review of a benefits decision complies with ERISA.  *See Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1317-18 (11th Cir. 2000); *Counts v. American Gen. Life Ins. Co.*, 111 F.3d 105, 107 (11th Cir. 1997).  It is reasonable to conclude that the Eleventh Circuit would apply the same standard under § 2590.606-4(b)(4), which is essentially an outgrowth of the requirements imposed on health plans by ERISA.

Finally, the Eleventh Circuit Court of Appeals has explained that a COBRA notice must "be sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002); *see also Pierce v. Visteon Corp.*, 843 F. Supp. 2d 936, 940 (S.D. Ind. 2011) ("a good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy COBRA requirements").  Mere technical deficiencies in a COBRA notice do "not prevent [a plaintiff] from making a meaningful choice to continue [his/her] coverage." *Franks v. Cent. Garden & Pet Co.*, No. 3:06-CV-68 (CDL), 2007 WL 2320624, at *6 (M.D. Ga. Aug. 10, 2007).

When analyzed under the good-faith standard articulated by the DOL, it is apparent that the Target COBRA Notice satisfies 11 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4(b)(4).  The face of the Target COBRA Notice shows that it contains the information Plaintiffs allege is lacking.

---

decisions allow a court's prior interpretation of a statute to override an agency's interpretation only if the relevant court decision held the statute unambiguous."  545 U.S. at 984.

As an initial matter, Plaintiffs assert that a physical election form must be attached to a COBRA notice under § 2590.606-4(b)(4)(v).  However, § 2590.606-4(b)(4)(v) does not make mention of a physical election form and no court appears to have ever held that such a form is required.[7]

Similarly, in accordance with § 2590.606-4(b)(4)(v), the Target COBRA Notice explains the process for enrolling in continuation coverage:

> ***To enroll in COBRA coverage***, access www.targetpayandbenefits.com or call the Target Benefits Center at **800-828-5850** no later than **December 4, 2018**.  You can enroll yourself and your covered family members.  If you do not enroll within that timeframe, you forfeit your rights to COBRA coverage. No exceptions to this election deadline will be allowed.[8]

The Target COBRA Notice also includes information regarding events that may result in a participant prematurely losing coverage under § 2590.606-4(b)(4)(xii).  Indeed, the Target COBRA Notice, under the bold heading "**When Coverage Ends**," states:

> In addition, COBRA coverage will end if any of the following situations occur:
>
> > Target stops providing group health benefits
> >
> > Premiums are not paid within 30 days of the due date (with the exception of the initial premium, which is due within 45 days of your election date)
> >
> > A person eligible for continued benefits becomes covered under any other group health plan or becomes entitled to Medicare. If you or a qualified beneficiary subsequently becomes covered under another group health plan or entitled to Medicare, immediately call the Target Benefits Center at 1-800-828-5850.[9]

---

[7] *See* § 2590.606-4(b)(4)(v) ("An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made[.]").

[8] COBRA Notice at 2 (first emphasis added).

[9] *Id*. at 3.

The Target COBRA Notice also expressly states that if a participant does not timely enroll in COBRA, all rights to COBRA coverage will be forfeited.  Thus, the Target COBRA Notice does in fact identify the process for enrolling in COBRA, states when coverage ends, and is clearly written in a manner calculated to be understood by the average plan participant.  The COBRA Notice further complies with § 2590.606-4(b)(4)(i) by identifying the party responsible for administering the plan as Target's logo, web address for its benefits page, and telephone number are prominently featured on the first page, and throughout, the COBRA Notice, and the notice directs participants to call the "Target Benefits Center" to enroll.

In fact, when the requirements of the C.F.R., the model notice, and the contents of the Target COBRA Notice are compared, the only information that can be seriously contended to be absent is a physical address for mailing the election notice and payment.  The Target COBRA Notice, however, contains a web address and toll-free number that participants could either access or call to enroll in COBRA, and to the extent an electronic address and phone number are not equivalent to a physical mailing address in this era of technology, such technical non-compliance, to the extent that the lack of a physical mailing address can even be described as non-compliance, nevertheless represents good-faith compliance with the DOL regulations.

In short, the Target COBRA Notice contains more than sufficient information for Plaintiffs to have made an informed decision as to whether to enroll in COBRA continuation coverage, provides instructions on how to enroll, and can be readily understood by an average plan participant.  As a result, Plaintiffs have failed to state a plausible claim from relief under COBRA.

**IV.    The Complaint Should be Dismissed Based Upon the Failure to Join an Indispensable Party.**

To determine whether to dismiss for failure to join an indispensable party, courts consider the two-part analysis under Rule 19.  *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1982).  "First, the court must determine whether the person in question should be joined.  If the person should be joined, but for some reason cannot be, the court must analyze the factors outlined in Rule 19(b) to determine whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable.'"  *Id*. (quoting Fed. R. Civ. P. 19(b)).

Courts first look to Rule 19(a) to determine whether a party is necessary and consider if:

> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)    as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a); *see also Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) (holding an absent party was necessary where proceeding without it would impair or impede its ability to protect its interests).

Then, courts turn to Rule 19(b) to determine whether to proceed without the absent party and consider the following non-exhaustive factors:

> (1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

17

           (2)    the extent to which any prejudice could be lessened or avoided by:

                (A)    protective provisions in the judgment;

                (B)    shaping the relief; or

                (C)    other measures;

           (3)    whether a judgment rendered in the person's absence would be adequate; and

           (4)    whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b).

Plaintiffs admit that Target has delegated administration of its benefits plan to a third party, Alight. *See* Compl. ¶ 62. Despite the fact that Plaintiffs identify Alight as the party responsible for distributing the Target COBRA Notice, Plaintiffs filed the instant action only against Target. Failure to include Alight, however, impairs Alight's ability to protect its own interests and defend itself and its conduct in this litigation. *See Teamsters Local Union No. 171*, 173 F.3d at 918–19. Furthermore, Target may become subject to multiple inconsistent rulings if Alight is absent from these proceedings. *See Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286–87 (4th Cir. 1994) (the potential for inconsistent judgments led the court to determine that absent parties were necessary). Because Alight is responsible for creating and distributing the Target COBRA Notice, if Target is found liable in this case without Alight present, Target may be forced to file its own suit against Alight. Alight would surely defend against such a suit by asserting the Target COBRA Notice complies with the law (because it does). But if Alight is successful in the hypothetical case against it in proving that the Target COBRA Notice is sufficient, Target would be subject to liability for Alight's actions without recourse due to two courts' different interpretations of the governing regulations. *See id.* ("If

18

two courts handle different aspects of the case separately, the possibility of inconsistent judgments arises.  In particular, different interpretations of law . . . will result in inconsistent judgments.").

Joinder of Alight is mandatory under Rule 19(b) because Alight's ability to protect itself would be prejudiced absent joinder.  Any alleged violation of the COBRA notice requirements falls squarely with Alight, and it would be inequitable for Alight not to have the opportunity to itself argue the legal sufficiency of the Target COBRA Notice in this case.  *See Teamsters Local Union No. 171*, 173 F.3d at 918–19.  Furthermore, Alight's absence from this litigation creates the possibility of duplicative litigation and inconsistent judgments, as noted above.

Therefore, dismissal under Rule 12(b)(7) is appropriate.

## V.   CONCLUSION

WHEREFORE, for the foregoing reasons Target respectfully requests this Court grant the Motion and dismiss Plaintiffs' Complaint with prejudice for lack of subject matter jurisdiction, or, alternatively, for failure to state a claim and/or for failure to join an indispensable party.  Target requests oral argument pursuant to Local Rule 3.01(j) and anticipates one hour for argument shall be sufficient.

Dated: October 29, 2019          **MCDERMOTT WILL & EMERY LLP**

By:   */s/ Michael G. Austin*
Michael G. Austin (FBN 457205)
maustin@mwe.com
Joseph Wasserkrug (FBN 112274)
jwasserkrug@mwe.com
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-4336
T: 305.347.6501 | F: 305.675.8403

Eliot T. Burris (State Bar. No. 24040611)
(application for admission *pro hac vice* forthcoming)
eburris@mwe.com
2501 North Harwood, Suite 1900
Dallas, Texas 75201
T: 214.295-8000 | F: 972-232-3098

*Counsel for Defendant Target Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **October 29, 2019,** a copy of the foregoing was electronically filed with the Clerk of Court by using the Court's CM/ECF system.  I also certify that the foregoing document is being served this day by e-mail on all counsel of record identified below.

**Chad A. Justice**
Justice for Justice LLC
1205 North Franklin Street
Suite 326
Tampa, Florida 33602
Phone: 813-566-0550
Fax:    813-566-0770
E-mail:chad@justiceforjustice.com

*Attorney for Plaintiffs*

**Brandon J. Hill**
**Luis A. Cabassa**
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue
Suite 300
Tampa, Florida 33602
Phone: 813-224-0431
Fax:    813-229-8712
Email: lcabassa@wfclaw.com
E-mail:bhill@wfclaw.com
E-mail:jcornell@wfclaw.com
E-mail:rcooke@wfclaw.com

*Attorneys for Plaintiffs*