UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SHAWN RIGNEY and KYLE ADAMS,**
**Individually and on behalf of all others**
**similarly situated,**

      **Plaintiffs,**

**v.**                              **Case No.: 8:19-cv-01432**

**TARGET CORPORATION,**

      **Defendant.**
_____/

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, Shawn Rigney and Kyle Adams ("Plaintiff"), file this response in opposition to Defendant Target Corporation's Motion to Dismiss the First Amended Complaint ("FAC") (Doc. 33). Plaintiffs respectfully submit that Defendant's Motion should be denied.

### BRIEF OVERVIEW

*First*, Defendant's Motion to Dismiss should be denied because Judge Scriven rejected many of Target's same arguments in *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-CV-116-T-35MAP, 2017 WL 6947455, at *1 (M.D. Fla. Aug. 25, 2017). Not only that, the COBRA forms from *Vazquez* are basically identical to the Target forms, making them deficient for many of the same reasons. (*See* Composite Exhibit A for side-by-side comparison). In addition to *Vazquez*, Judge Scriven also rejected in *Delaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251, at *3 (M.D. Fla. Mar. 20, 2018) basically the same arguments raised by Target here. Chief Judge Merryday reached a similar decision in *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *1 (M.D. Fla. May 18, 2017). So did two Southern District of Florida Courts in *Gilbert v. Suntrust Banks, Inc.*, No. 15-80415-CIV, 2015 WL

1

11660244, at *1 (S.D. Fla. Sept. 18, 2015), and *Bryant v. Wal-Mart Store, Inc.,* No. 16-24818-CIV, 2019 WL 3542827, at *2 (S.D. Fla. Apr. 18, 2019).  None of these parallel cases are cited in Target's brief.

*Second*, the Amended Complaint alleges a plausible claim for relief for violation of ERISA and 29 C.F.R. § 2590.606–4(b)(4) *et seq.*  For example, the Amended Complaint alleges Defendant's COBRA enrollment notice violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include an address indicating where COBRA payments should be mailed. (FAC, Doc. 27, ¶ 9). It also alleges Defendant's COBRA notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to identify the plan administrator or even the COBRA administrator. (FAC, Doc. 27, ¶ 9). And it alleges Defendant's "COBRA Continuation Coverage Enrollment Notice," violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself fails to sufficiently explain how to enroll in COBRA. Finally, the Amended Complaint alleges the Target COBRA notice cumulatively violates 29 C.F.R. § 2590.606–4(b)(4).

*Third*, the Amended Complaint alleges part of Defendant's COBRA information was sent late, allegations which Defendant's Motion overlooks entirely.  After sending the original COBRA notice to Plaintiffs on September 24, 2018, Target mailed another COBRA document to Plaintiffs on July 11, 2019, attached as Exhibit D to the Amended Complaint, labeled as "Important Information About Your COBRA Continuation Coverage." (FAC, Doc. 27, ¶ 12). It was mailed some nine (9) months after Plaintiff's termination and almost two months after Target was served with the original Complaint in this case. (FAC, Doc. 27, ¶ 12). Because this document was due at least 44 days from Plaintiff's termination, the deadline for it to be provided was November 4, 2019, meaning it was mailed 249 days late.  (FAC, Doc. 27, ¶ 12).

*Fourth*, Defendant's arguments alleging "good faith" compliance with COBRA should be rejected entirely.  (Doc. 48, p. 14).  As Judge Merryday explained when he rejected the same-good arguments in *Valdivieso v. Cushman & Wakefield, Inc*., No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *2 (M.D. Fla. May 18, 2017), since promulgation of the final DOL regulations in 2004, a "good-faith" attempt to comply with the law no longer excuses an employer's breach of the notice requirement.  But even if it did, it is an affirmative defense for which Target must carry the burden to prove at trial, not for Plaintiffs to carry at the initial pleading stage.

*Fifth*, and finally, Defendant is wrong to argue Plaintiffs should have also sued third-party Alight Solutions.  Because Alight is neither the plan sponsor nor the plan administrator, it is not a proper party to this action.  Thus, Plaintiffs simply do not have a claim against Alight Solutions under ERISA, meaning Alight Solutions is not an indispensable party.

## SUPPORTING FACTS FROM PLAINTIFFS' AMENDED COMPLAINT

### *The Named Plaintiffs and Target's Deficient COBRA Form*

1.     Named Plaintiff Shawn Rigney is former employee of Defendant and was a participant in Defendant's health plan.  (FAC, Doc. 27, ¶ 33).  Plaintiff Kyle Adams was also covered under Mr. Rigney's health plan.   (FAC, Doc. 27, ¶ 33).

2.     Plaintiff Shawn Rigney's employment was terminated on September 21, 2018.  Importantly, he was not terminated for gross misconduct.  (FAC, Doc. 27, ¶ 34).  Thus, when Mr. Rigney was terminated both Plaintiffs experienced a qualifying event (termination of employment) on September 21, 2018.  (FAC, Doc. 27, ¶ 35).

3.     Following this qualifying event, Defendant mailed Plaintiffs the deficient COBRA enrollment notice attached to the Amended Complaint as Exhibit B on September 24, 2018.  (FAC, Doc. 27, ¶ 36).  Also, on September 24, 2018, Defendant mailed to Plaintiffs the attached

"Confirmation of Coverage – My Pay and Benefits", a copy of which is attached as Exhibit C to the Amended Complaint, containing some – but not all – of the information missing from its COBRA enrollment notice.  (FAC, Doc. 27, ¶ 36).

4.      Target mailed a third COBRA document to Plaintiffs on July 11, 2019, attached as Exhibit D to the Amended Complaint, labeled as "Important Information About Your COBRA Continuation Coverage."  (FAC, Doc. 27, ¶ 37).

5.      Exhibit D to the Amended Complaint was mailed approximately nine (9) months after Plaintiff's termination and almost two months after Target was served with the original Complaint in this case, or 290 days from the date of the first two COBRA forms.  (FAC, Doc. 27, ¶ 37).  Because this document was due at least 44 days from Plaintiff's termination, the deadline for it to be provided was November 4, 2019, meaning it was mailed 249 days late as a matter of law.  (FAC, Doc. 27, ¶ 37).

### *Target's Deficient COBRA Notice*

6.      Despite having access to the Department of Labor's Model COBRA form, a copy of which is attached as Exhibit A, Target chose not to use the model form— presumably to save Target money because COBRA coverage is inherently expensive for employers.   (FAC, Doc. 27, ¶ 2).

7.      The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiffs.  (FAC, Doc. 27, ¶ 4).  They also caused Plaintiffs economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.  (FAC, Doc. 27, ¶ 4).

8.      Target, the plan sponsor and plan administrator of the Target Health Plan ("Plan"), has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon

the occurrence of a "qualifying event" as defined by the statute.  (FAC, Doc. 27, ¶ 5).

### *Specific Violations*

9.      Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. (FAC, Doc. 27, ¶ 27).  The specific violations are as follows:

- Defendant's COBRA enrollment notice, attached as Exhibit B, violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes);

- The COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to provide the address to which payments should be sent;

- The COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, including as to both the Plan Administrator and COBRA Administrator;

- The COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information. There is no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act; and, finally,

- The COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.[2]

---

[2] (FAC, Doc. 27, ¶ 27, a, b, c, e, and f).  Based on arguments raised in Defendant's Motion and the language from the COBRA notices, Plaintiff voluntarily withdraws her allegations from the Amended Complaint, Doc. 27, ¶ 27, d, arguing that the COBRA notice fails "to at The COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to include information stating that a participant may prematurely lose COBRA coverage (if, for instance, the participant becomes covered under another group health plan, becomes Medicare eligible or fails to make timely payment."

### *The Resultant Harm to Plaintiffs*

10.     Defendant's COBRA notice confused Plaintiffs and resulted in their inability to make an informed decision as to electing COBRA continuation coverage. (FAC, Doc. 27, ¶ 28). In fact, Plaintiff Shawn Rigney was unable to elect COBRA because of the confusing and incomplete Target COBRA notice. (FAC, Doc. 27, ¶ 28).  For example, the COBRA's notice omission of a payment address left him without information on where to mail payment if elected. Similarly, Exhibit B failed to sufficiently explain how to enroll in COBRA.  (FAC, Doc. 27, ¶ 28).

11.     Defendant's attempt to cure the above deficiencies with additional letters, attached as Exhibits C and D to the Amended Complaint, only added to the confusion.  (FAC, Doc. 27, ¶ 29).  As a result, Plaintiffs could not make an informed decision about their health insurance and lost health coverage.  (FAC, Doc. 27, ¶ 29).

### *Plaintiffs' First Concrete Injury: Informational Injury*

12.     Defendant's deficient COBRA notice caused Plaintiffs an informational injury when Defendant failed to provide them with information to which they were entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  (FAC, Doc. 27, ¶ 30).  Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). (FAC, Doc. 27, ¶ 30).  Defendant injured Plaintiffs and the class members they seek to represent by failing to provide all information in its notice required by COBRA.  (FAC, Doc. 27, ¶ 30).

### *Plaintiffs' Second Concrete Injury: Loss of Insurance Coverage*

13.     Besides the informational injury suffered, Plaintiffs also suffered a tangible injury

in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to Defendant's deficient COBRA election notice. (FAC, Doc. 27, ¶ 31).

### *Plaintiffs' Third Concrete Injury: Medical Bills*

14.     And, not only did Plaintiffs lose their insurance coverage (which they still lacked as of the date the lawsuit was filed), during that time they incurred medical bills resulting in further economic injury, including as a result of a multiple doctor and follow-up visits related to Shawn Rigney's injury sustained while working for Defendant.  (FAC, Doc. 27, ¶ 32).  Plaintiffs' failure to receive adequate COBRA notice resulted in them incurring unpaid medical bills.  (FAC, Doc. 27, ¶ 32).

15.     Based on these well-pleaded facts, Defendant's Motion should be denied.

## MEMORANDUM OF LAW

### A.    Legal Standard.

"The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a low one." *Vazquez v. Marriott Int'l, Inc*., No. 8:17-CV-116-T-35MAP, 2017 WL 6947455, at *1 (M.D. Fla. Aug. 25, 2017)(*citing to Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al*., 711 F.2d 989, 995 (11th Cir. 1983).  A plaintiff must plead only sufficient facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007).  In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. *Quality Foods*, 711 F.2d at 994-95.  Under this standard, Plaintiffs respectfully submit Defendant's Motion should be denied.

### B.    Article III Standing.

Named Plaintiffs Shawn Rigney and Kyle Adams have met their burden of pleading an

injury-in-fact sufficient to establish Article III standing.  Here, Plaintiffs have alleged two kinds of harm: (1) informational harm in the form of deficient COBRA notice missing information this Court opined is required of COBRA notices, and, (2) economic harm in the form of lost insurance benefits, and incurred medical bills.  Such allegations establish Article III standing, as explained by Judge Scriven in her *Vazquez* and *Delaughter* decisions.

## 1.  **Informational Injury.**

Judge Scriven held in *Delaughter* that the "…Plaintiff's alleged informational injury due to [Defendant's] failure to provide a proper COBRA notice, as required under § 1166(a) of ERISA, is sufficient to establish standing."  *Delaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251, at *2 (M.D. Fla. Mar. 20, 2018).  Plaintiffs' have alleged precisely the same informational injury here.  Thus, like in *Delaughter*, Plaintiffs' informational injury provides them with Article III standing.

The Eleventh Circuit has held that an injury-in-fact exists when a statutorily created right to receive certain information has been violated. *See Nicklaw v. CitiMortgage, Inc*., 839 F.3d 998, 1002 (11th Cir. 2016) (noting that a "plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury"); *Church v. Accretive Health, Inc*., 654 Fed. App'x. 990, 993–95 (11th Cir. 2016) (holding that not receiving information to which one is statutorily entitled is a concrete injury).  "Plaintiff's alleged informational injury due to [Defendant's] failure to provide a proper COBRA notice, as required under § 1166(a) of ERISA, is sufficient to establish standing."  *Delaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251, at *2 (M.D. Fla. Mar. 20, 2018).

Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with

information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). *McFarlane v. First Unum Life Ins. Co*., 274 F. Supp. 3d 150, 162 (S.D.N.Y. 2017) (beneficiary's Article III standing established, in part, because of ERISA informational requirement).  Here, the Named Plaintiffs, Shawn Rigney and Kyle Adams, have Article III standing because Defendant failed to provide them with a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a), giving rise to an "informational injury" conferring Article III standing.  In fact, the Supreme Court has long held that not receiving information to which one is entitled by law is a quintessential informational injury that confers Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *Citizen v. Department of Justice*, 491 U.S. 440 (1989).

There is no question that in this case Plaintiffs meet the injury-in-fact requirement because they suffered an informational injury. Like the injuries complained of in *Federal Election Commission* and *Public Citizens*, Plaintiffs' injuries in this case stem from Defendant's failure to provide Plaintiffs information required by statute, specifically COBRA election information. Additionally, Defendant's failure to provide COBRA information resulted in a concrete injury because it prevented Plaintiffs from obtaining COBRA continuation coverage.  These are sufficiently concrete and particularized injuries to confer Article III standing.

In sum, Named Plaintiffs Shawn Rigney and Kyle Adams have Article III standing as a result of the informational injury pled in their Amended Complaint for the same reason this Honorable Court determined that the plaintiffs from *Delaughter* and *Vazquez* had Article III standing.  The informational injuries suffered in each case are, in fact, identical.  Defendant's Motion should be denied accordingly.

2.      **Economic Injury**.

While the informational injuries suffered by Plaintiffs are more than sufficient to confer

Article III standing, the economic injuries Named Plaintiffs Shawn Rigney and Kyle Adams

suffered in the form of lost insurance benefits and medical bills give rise to additional Article III

standing.   In fact, in *Vazquez* Judge Scriven opined as follows:

> Specifically, Defendant asserts that Plaintiff has not articulated any harm resulting
> from the alleged deficient COBRA notice and that Plaintiff's loss of insurance
> coverage occurred because she was unable to afford it, not because of any alleged
> deficiency in the notice. Plaintiff, however, declares that she suffered the loss of
> insurance coverage due to the deficiency in the notice, in addition to being unable
> to afford coverage. Plaintiff also alleges that she incurred significant medical bills
> as a result of the loss of insurance. These allegations are sufficient to state a
> plausible claim of injury in fact and, thus, to confer standing upon the Plaintiff. To
> the extent that Plaintiff's claim is contestable on grounds that she lacked funds to
> make payment for COBRA benefits, that challenge is not suited for resolution on a
> Motion to Dismiss.

*Vazquez v. Marriott Int'l, Inc*., No. 8:17-CV-116-T-35MAP, 2017 WL 6947455, at *2 (M.D. Fla.
Aug. 25, 2017).  (internal record citations omitted).

The same outcome is warranted here because Plaintiffs allege the same resultant economic

harm.  Contrary to Defendant's Motion, Plaintiffs' Amended Complaint specifically alleged

Defendant's defective notice caused them to suffer a concrete economic injury fairly traceable to

the Target COBRA Notice.  For example, the Amended Complaint specifically alleges, "Plaintiffs

also suffered a tangible injury in the form of economic loss, specifically the loss of insurance

coverage and incurred medical bills, ***due to*** Defendant's deficient COBRA election notice. (FAC,

Doc. 27, ¶ 31).  (Emphasis added).

Furthermore, the Amended Complaint goes on to allege, "Plaintiff Shawn Rigney was

unable to elect COBRA ***because of*** the confusing and incomplete Target COBRA notice. For

example, the COBRA's notice omission of a payment address left him without information on

where to mail payment if elected. Similarly, Exhibit B ***failed to sufficiently explain*** how to enroll

in COBRA." (FAC, Doc. 27, ¶ 28). (Emphasis added). And, the Amended Complaint includes the following allegations, "not only did Plaintiffs lose their insurance coverage (which they still lacked as of the date this lawsuit was filed), during that time they incurred medical bills resulting in further economic injury, including as a result of a multiple doctor and follow-up visits related to Shawn Rigney's injury sustained while working for Defendant. Simply put, Plaintiffs' failure to receive adequate COBRA notice resulted in them incurring unpaid medical bills." (FAC, Doc. 27, ¶ 32).

In light of the foregoing, "[]…construed in the light most favorable to the Plaintiff, these allegations are sufficient to state a plausible claim of injury in fact traceable to the allegedly defective COBRA notice as required to confer standing upon the Plaintiff." *Delaughter v. ESA Mgmt., LLC*, No. 8:16-CV-3302-MSS-AEP, 2018 WL 7349251, at *2 (M.D. Fla. Mar. 20, 2018)(Judge Scriven denied motion to dismiss and found the plaintiff had Article III standing in COBRA notice case); *see also Bryant v. Wal-Mart Store, Inc.,* No. 16-24818-CIV, 2019 WL 3542827, at *3 (S.D. Fla. Apr. 18, 2019) (denying motion to dismiss and finding allegations relating to lost insurance coverage sufficient for Article III standing purposes). Thus, just as in *Delaughter* and *Bryant*, here the Plaintiffs have Article III standing.

## C.  Specific Violations.

### 1.  29 C.F.R. § 2590.606–4(b)(4)(xii).

As a threshold matter, Defendant's COBRA notice, attached as Exhibit B to the Amended Complaint, fails to include information on where to send payment. Defendant concedes this point. (*See* Doc. 33, p. 18). This is a violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which, as explained by Judge Merryday when he denied a similar motion to dismiss on this same issue in *Valdivieso*, requires all COBRA notices include "the address to which payments should be sent."

In *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *2 (M.D. Fla. May 18, 2017), Judge Merryday denied a similar 12(b)(6) Motion to Dismiss a COBRA case, in part, because the notice failed to include an address to send payment. The *Valdivieso* court ultimately denied the defendant's motion to dismiss based, in part, on the payment address omission and held as follows:

> The notice must include "the address to which payments should be sent." Valdivieso alleges that the notice fails to mention the address to which he must send payment. Rather than include an address to remit payment, the notice states that "monthly invoices will provide a remittance address" and that "[a]dditional information about payment will be provided to you after the election form is received." Cushman & Wakefield argues that the notice complies with the "model notice." 29 C.F.R. § 2590.606–4(g) states that the "use of the model notice, appropriately modified and supplemented, will be deemed to satisfy the notice content requirements…." Because Cushman & Wakefield's notice neither includes a payment address nor duplicates the model notice, Valdivieso states a plausible claim for violation of 29 C.F.R. § 2590.606–4(b)(4)(xii).

*Valdivieso v. Cushman & Wakefield, Inc*., No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *2 (M.D. Fla. May 18, 2017).

Defendant's attempt to cure this deficiency by providing a mailing address for payment in Exhibit C to the Amended Complaint only demonstrates that Defendant knows this information must be disclosed.  But this piecemeal strategy for separating COBRA information does not comport with the law.  Rather, as demonstrated by the Model DOL COBRA notice (*see* FAC, Doc. 27-1), which is a single cohesive document, 29 C.F.R. § 2590.606-4(b)(4)(xii) contemplates providing the statutorily required information in a COBRA "notice" (singular), rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

The outcome from *Valdivieso* should follow here.  Because Defendant's COBRA notice neither includes a payment address nor duplicates the model notice, Plaintiff states a plausible claim for violation of 29 C.F.R. § 2590.606–4(b)(4)(xii).  Defendant's Motion should be denied

accordingly.

2.     **29 C.F.R. § 2590.606-4(b)(4)(i).**

Nowhere throughout the multiple Defendant COBRA documents does Defendant identify the Plan Administrator.   Nor does Defendant identify its third-party administrator, Alight Solutions.  Both are required by law.  Specifically, 29 C.F.R. § 2590.606-4, requires, among other things, that the notice:

> …shall contain . . . [t]he name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits" and "[a]n explanation of the plan's procedures for electing continuation coverage.

29 C.F.R. § 2590.606-4(b)(4), (i), (v).

ERISA-governed plans often have two types of "administrators." *See* Corporate Counsel's Guide to ERISA § 4:6 (2014). The first type—a COBRA administrator—is the entity that "administers claims for employee welfare benefit plans and has authority to grant or deny claims." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006).

The second type—a plan administrator—is usually the "employer who adopted the benefit plan in question." Corporate Counsel's Guide to ERISA § 4:6. "The phrase 'plan administrator' should not be confused with the term 'claims administrator.' . . . [T]h[e] role [of claims administrator] usually does not confer on that party the status of plan administrator." *Id.* Quite often, indeed, the claims administrator and the plan administrator are not the same. *See, e.g.*, *Moore*, 458 F.3d at 424–25, 438 (distinguishing between the employer/plan administrator and the insurance company/claims administrator); *see also Fendler v. CNA Grp. Life Assurance Co.*, 247 F. App'x 754, 755, 758–59 (6th Cir. 2007).  Defendant's notice fails to identify either the Plan or Cobra Administrator.  This too warrants denial of the Motion to Dismiss.

A nearly identical scenario recently occurred in *Bryant v. Wal-Mart Store, Inc.,* No. 16-24818-CIV, 2019 WL 3542827, at *2 (S.D. Fla. Apr. 18, 2019).   In *Bryant* the plaintiff alleged that the defendant, Walmart, failed to provide her with a COBRA notice that complies with the law because it failed to identify the Plan Administrator as required by 2590.606-4(b)(4)(i), just as Plaintiff has done here.   Walmart moved to dismiss under 12(b)(6), raising many of the same arguments Defendant raised in this case.   Walmart's Motion was denied, in part, because Walmart's COBRA notice failed to identify the Plan Administrator.   Specifically, the Court in *Bryant* held as follows:

> After reviewing Defendant's Notice, the model election notice, and the allegations of Plaintiff's Amended Complaint, this Court denies Defendant's Motion to Dismiss Plaintiff's claims as they relate to 29 C.F.R. j 2590.606-4(b)(4)(i). As previously stated, Defendant's notice omits any reference to the plan administrator's name, address, and telephone number, as required by 29 C.F.R. § 2590.606-4(b)(4)(i). Without the plan administrator's name, address, and telephone number, this Court finds that Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

*Bryant v. Wal-Mart Store, Inc*., No. 16-24818-CIV, 2019 WL 3542827, at *6 (S.D. Fla. Apr. 18, 2019)).  (Internal citations omitted).

In its above analysis the *Bryant* Court carefully analyzed the controlling law, namely 29 C.F.R. § 2590.606-4(b)(4)(i), and because section 2590.606-4(b)(4)(i) requires the identification of the plan administrator, Walmart's motion to dismiss was denied.  Defendant's motion to dismiss should be denied for the same reason.  Like Walmart's COBRA notice, Defendant's notice also fails to identify the Defendant Plan Administrator.  This omission alone warrants denial of Defendant's Motion.

Defendant's Motion should also be denied because its fails to identify Alight Solutions, the Defendant COBRA administrator, by name as mandated by 29 C.F.R. § 2590.606-4(b)(4)(i). Instead, Defendant merely refers to a blasé "Target Benefits Center" and provides a generic 1-

800E telephone number and catch-all website address.  A similar scenario arose in *Gilbert v. Suntrust Banks, Inc.*, No. 15-80415-CIV, 2015 WL 11660244, at *2 (S.D. Fla. Sept. 18, 2015), in which the Court denied a motion to dismiss premised on many of the same arguments Defendant raises here.  Specifically, in *Gilbert* the Court held as follows:

> Here, Plaintiffs allege that Defendant's Notice does not identify the party responsible for administering continuation coverage in a manner calculated to be understood by the average plan participant, and the Notice does not identify the party responsible for administering continuation coverage in a manner calculated to be understood by the average plan participant, and the Notice does not adequately explain the procedures for electing coverage because it merely points the plan participant to an unhelpful website and phone number. Plaintiffs have attached a copy of the Notice to their amended complaint, which the Court will consider in its ruling.  After review of the Notice attached to Plaintiffs' amended complaint, and because the Court must consider Plaintiffs' allegations as true at this stage in the litigation, the Court finds that Plaintiffs have set forth sufficient factual matter to state a claim for relief.

*Gilbert*, at *2 (S.D. Fla. Sept. 18, 2015).  (Internal citations omitted).

Just as in *Gilbert,* in this case nowhere is Defendant's COBRA Administrator, Alight Solutions, mentioned anywhere in the COBRA notice.  The inclusion by Defendant of a non-descript "Target Benefits Center," a generic 1-800 telephone number, and even a catch-all website address is simply not what the law requires.  This Court should follow *Bryant* and *Gilbert* and Defendant's motion.

**3.      29 C.F.R. § 2590.606-4(b)(4)(v).**

Defendant's COBRA Notice also fail to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v).[4] Unlike the DOL's Model Election Notices, most COBRA notices that provide actual physical "election forms" that can be filled out

---

[4] "The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:…(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made."   29 C.F.R. § 2590.606-4(b)(4)(v) (Emphasis added).

and mailed in by those seeking coverage.  But here the Defendant COBRA forms fail to provide an election physical form, and merely point plan participants to a general H.R. website (www.targetpayandbenefits.com) and 1-800 number.

Nowhere in the Defendant COBRA notice does Target bother explaining <u>how</u> to elect or enroll in COBRA once a person calls the phone number or visit the website to which they are directed.  Merely providing a phone number or a website and expecting Plaintiffs and the class members to figure out how to enroll in COBRA once they call or visit the website is not what COBRA's notice requirements contemplate. "***The notice*** must be sufficient to permit the discharged employee to make an informed decision whether to elect [continuation] coverage." *Scott v. Suncoast Beverage Sales, Ltd*., 295 F.3d 1223, 1230 (11th Cir.2002) (*citing Meadows v. Cagle's, Inc*., 954 F.2d 686, 692 (11th Cir. 1992).  (Emphasis added).  Providing multiple notices telling someone to just call a number, or visit a website, and then assuming they will be able to make an informed decision after they do so is not sufficient notice because the notice itself -- standing alone -- is supposed to help one make the informed decision of whether to enroll in COBRA.  A notice without information on how to enroll in COBRA, like the Defendant notice, is simply not what the law requires.

A decision from the Northern District of Alabama analyzed this issue. In *Griffin,* as here, the plaintiff brought a lawsuit challenging the adequacy of a COBRA notice, and the employer argued that the contents of its COBRA notice were sufficient. *Griffin*, 2015 WL 1635939, at *11-12. In denying the employer's motion for summary judgment, the *Griffin* court found that the employer's notice was deficient, because, among other reasons, the page containing the instructions for how to fill out the enclosed election form was not included in the notice. The *Griffin* court found that the notice therefore "fail[ed] to explain adequately the plan's procedures

for electing coverage." *Id*. Here, the Defendant notice has no election form. Instead, the notice simply urges people to visit a website, or call a phone number, but does nothing to explain to people how to enroll in COBRA once they do call the number or visit the website provided. As a result, Defendant's COBRA notice fails to adequately explain the procedures for electing coverage. This is a plain violation of 29 C.F.R. § 2590.606-4(b)(4)(v).

    **4.**    <u>**29 C.F.R. § 2590.606-4(b)(4)(vi).**</u>

Defendant's COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information. For example, there is simply no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act. Again, Defendant's COBRA enrollment notice fails to include this information.

    **5.**    <u>**Violation 29 C.F.R. § 2590.606-4(b)(4).**</u>

Defendant's multiple COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant. This particular section of the regulation mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant." Without the critical pieces of information outlined above as missing from Defendant's COBRA forms, Defendant's COBRA notice cannot be said to be written in a manner calculated "to be understood by the average plan participant."

By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission of how to actually enroll in COBRA, where to send payment, failure to include all required explanatory information, and even

who the Plan Administrator and/or the COBRA Administrator is, Defendant cumulatively violated 29 C.F.R. § 2590.606- 4(b)(4).  *Bryant v. Wal-Mart Store, Inc*., No. 16-24818-CIV, 2019 WL 3542827, at *6 (S.D. Fla. Apr. 18, 2019) ("Without the plan administrator's name, address, and telephone number, this Court finds that Defendant's notice is not 'sufficient to permit the discharged employee to make an informed decision whether to elect coverage.' " (*citing to* Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1230 (11th Cir. 2002)).  Thus, just as in *Bryant*, Defendant's motion to dismiss should be denied.

## D.   Defendant's "Good Faith" Arguments Do Not Warrant Dismissal.

Finally, despite the above deficiencies in the COBRA notice, throughout much of its brief Defendant argues dismissal is somehow appropriate because of Target's "good faith" efforts to comply with the law and DOL regulations.  (*See* Doc. 33, pp. 15-19).  This argument should be rejected entirely, as Judge Merryday did in *Valdiviseo* when he held as follows:

> Citing *Scott v. Suncoast Beverage Sales, Ltd*., 295 F.3d 1223, 1230–31 (11th Cir. 2002), which suggests that an employer's good-faith attempt to comply with COBRA's notice requirements discharges the employer's notice obligation, Cushman & Wakefield argues that the notice permitted Valdivieso to "make an informed decision whether to elect coverage." (Doc. 22 at 5). COBRA requires an employer to notify, "in accordance with regulations prescribed by the Secretary," a qualifying beneficiary about the beneficiary's continuing eligibility for health care under COBRA. 29 U.S.C. § 1166 (1997). Although COBRA contemplates a regulation that expounds the notice requirement, for several years after COBRA's passage the Secretary of Labor promulgated no notice regulation. Lacking regulatory guidance, employers "operate[d] in good[-]faith compliance with a reasonable interpretation of what adequate notice entails." *Degruise v. Sprint Corp*., 279 F.3d 333, 336 (5th Cir. 2002) (Mills, J.) (internal quotation omitted); *accord Smith v. Rogers Galvanizing Co*., 128 F.3d 1380, 1384 (10th Cir. 1997) (Briscoe, J.). **In 2004, the Secretary of Labor promulgated a notice regulation, Section 2590.606–4, which includes no "good-faith" defense. Because a "good-faith" attempt to comply with the law no longer excuses an employer's purported breach of the notice requirement, the pre-2004 decisions are inapposite**. Griffin v. Neptune Tech. Grp., 2015 WL 1635939 at *10 (M.D. Ala. Apr. 13, 2015) (Thompson, J.) ("[N]ow that regulations have been promulgated, employers...must turn to them for guidance.").

18

*Valdivieso v. Cushman & Wakefield, Inc*., No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at \*2 (M.D. Fla. May 18, 2017).  (Emphasis added).

Defendant offers no reason to deviate from Judge Merryday's well-reasoned decision from *Valdivieso*, much less the plain language of the 2004, notice regulation, Section 2590.606–4, which includes no "good-faith" defense.  Rather, in support of its arguments, Defendant's Motion cites a number of cases -- none of which appear to have been decided on a motion to dismiss -- that require plan administrators to make a "good faith" effort to provide adequate notice. 29 U.S.C. § 1166, which sets forth the notice requirements under COBRA, states that notice must be provided, "In accordance with regulations prescribed by the Secretary." Prior to 2004, the Secretary of Labor had not promulgated regulations defining adequate notice under § 1166; in the absence of any regulations, courts reasoned that employers need only "operate in good faith compliance with a reasonable interpretation of what adequate notice entails." *Degruise v. Sprint Corp*., 279 F.3d 333, 336 (5th Cir.2002) (internal quotations omitted). "However, now that regulations have been promulgated, employers, and the court, must turn to them for guidance."  *Griffin v. Neptune Tech. Grp*., No. 2:14CV16-MHT, 2015 WL 1635939, at \*10 (M.D. Ala. Apr. 13, 2015).  Because Target has not shown that it provided sufficient notice to Plaintiffs as defined under § 1166, it is not entitled to dismissal.  *Griffin v. Neptune Tech. Grp*., No. 2:14CV16-MHT, 2015 WL 1635939, at \*12 (M.D. Ala. Apr. 13, 2015) (denying summary judgment in defective COBRA notice case and refusing to consider good-faith defense).

## E.  Alight Solutions is Not an "Indispensable Party."

Defendant's Motion takes a parting shot at the Amended Complaint by seeking dismissal under Fed.R.Civ.P. 12(b)(7) because Plaintiffs did not name "Alight Solutions" as a defendant in the Amended Complaint.  (Doc. 33, pp. 19-22).  But Alight is not the "plan administrator" of the

Target Health.  Nor is it the plan sponsor.  Thus, Alight cannot be subject to ERISA liability to Plaintiffs nor the putative class members.

In the Eleventh Circuit, "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). Here, Target is the plan administrator, not Alight. Thus, Plaintiff's claims for violation of ERISA must be pled against Target, and cannot be pled against Alight.  *Kennedy v. Met. Life Ins. Co.*, 357 F. Supp. 2d 1346, 1349 (M.D. Fla. 2005) (holding that the plaintiff had no cause of action under ERISA against insurance company that processed claims because the plan documents identified employer's benefits committee as the plan administrator, and only a plan administrator can be liable for ERISA violations).

Nor could Plaintiffs rely on the "de facto" administrator doctrine to hold Alight liable, further demonstrating why Defendant's Motion must be denied.  The Eleventh Circuit has, in fact, recognized that an employer may be deemed a de facto administrator for "ERISA liability purposes if it retains control over the plan and its administration, irrespective of the actual plan terms. *See Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001) ("[I]f the employer is administering the plan, then it can be held liable for ERISA violations.").  However, the Eleventh Circuit has repeatedly rejected any extension of the de facto administrator to third-parties, like Alight. *See Olives v. Coca Cola Co.*, 497 F.3d 1181, 1194 (11th Cir. 2007).  In sum, because Alight is a third-party administrator and not the plan administrator, it cannot be subject to liability under ERISA and 29 C.F.R. § 2590.606-4.  Thus, Plaintiffs' decision not to include Alight as a Defendant in the First Amended Complaint was legally sound and Defendant's Motion should be denied.

DATED this 9th day of January, 2020.

Respectfully submitted,

_/s/Brandon J. Hill_
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA**
Florida Bar Number: 053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
_Attorneys for Plaintiff_

- and-

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**Justice for Justice LLC**
1205 N Franklin St, Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com
_Attorney for Plaintiff_

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of January, 2020, electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to all counsel of record.

_/s/Brandon J. Hill_
**BRANDON J. HILL**