## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SHAWN RIGNEY and KYLE ADAMS,**
**Individually and on behalf of all others**
**similarly situated,**

      **Plaintiffs,**

v.                                  **CASE NO.: 8:19-cv-01432**

**TARGET CORPORATION,**

      **Defendant.**
_____/

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
### APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed.R.Civ.P. 23, Named Plaintiffs Shawn Rigney and Kyle Adams file this Unopposed Motion with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the Settlement Agreement; (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement; and, finally, (5) approving the settlement in a subsequent Order. A proposed Order granting this Motion is attached as Exhibit A. All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement") attached as Exhibit B. In support of this Unopposed Motion, Plaintiffs respectfully submit the following:

## I.    <u>BACKGROUND AND OVERVIEW OF SETTLEMENT</u>.

Plaintiffs filed a Class Action Complaint against Defendant in which they asserted claims for themselves and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").   The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiffs and putative class members against Defendants and all Released Parties.

The terms of the Settlement Agreement, which the Parties carefully modeled after a similar settlement approved by Judge Scriven in *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127), provide for immediate relief to approximately 92,000 Settlement Class Members. Defendant will contribute the gross sum of $1,600,000 into a common fund as per the terms of the Settlement Agreement. Settlement Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement.  The gross payment per Settlement Class Member is approximately $17.40 per Settlement Class Member, an amount consistent with other COBRA class action settlements.  There is no reverter of settlement funds to Defendant.  If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, Bay Area Legal Services.  The proposed Settlement is fair and reasonable, and Preliminary Approval by the Court should be granted.

A.    <u>**The Claims and Case Procedural History**</u>.

This is a putative class action brought by Plaintiffs against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The lawsuit generally alleges Defendant provided Plaintiffs and other class members with a deficient COBRA Notice. More specifically, Plaintiffs asserted that Defendant's COBRA Notice did not adequately inform them of how to exercise their rights to elect COBRA coverage. In violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. the Notice failed to: (i) adequately explain the procedures for electing coverage; (ii) properly include an address indicating where COBRA payments should be mailed; (iii) identify the Plan Administrator; and, finally, (iv) was not written in a manner calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Plaintiffs sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of themselves and all others similarly situated.

The case was not settled until after substantive written discovery was conducted (including third-party discovery), Defendant's potentially dispositive motion to dismiss was fully briefed, and only after two separate mediation sessions conducted separately, first by Hunter R. Hughes, III, and then by R. Wayne Thorpe, both of whom are widely-regarded as the two of the nation's top class-action mediators. (Exhibit F, Hill Decl., ¶ 10).

The original complaint was filed on June 13, 2019. (Doc. 1). Due to the large number of people impacted by this case and the uniformity of Defendant's COBRA notice used across the country, the parties initially agreed an early class-wide mediation. (Exhibit F, Hill Decl., ¶ 11). Thus, on July 30, 2019 the Parties filed a Joint Motion to Stay the case pending mediation to be conducted in Atlanta, Georgia before class-action mediator Hunter R. Hughes,

III.  (*See* Docs. 13, 16).  The Court granted the Motion and the case was stayed.  (*See* Docs. 14, 17).

The first mediation was conducted on October 8, 2019.  (Exhibit F, Hill Decl., ¶ 12). Unfortunately, it resulted in an impasse.  The parties resumed litigation immediately thereafter. Plaintiffs propounded exhaustive class-wide written discovery, including through interrogatories, requests for production, submission of Fed.R.Civ.P. 30(b)(6) deposition notice with topics, and third-party subpoenas for documents and for deposition to Defendant's COBRA administrator.  (Exhibit F, Hill Decl., ¶ 13).  Plaintiffs obtained thousands of pages of documents and critical sworn responses from Defendant, and also from Defendant's COBRA administrator, which ultimately help guide settlement discussions.  (Exhibit F, Hill Decl., ¶ 13).  Defendant, in turn, propounded written discovery on each named Plaintiffs, including requests for production and interrogatories.  (Exhibit F, Hill Decl., ¶ 14).  The extensive discovery efforts undertaken by the Parties prior to settlement ensured the Parties' decision to settle was well-informed.  (Exhibit F, Hill Decl., ¶ 14).

In terms of pleadings and briefing, Defendant filed its first potentially dispositive motion to dismiss on October 29, 2019.  (Doc. 21).  The Parties filed their case management report on November 8, 2019.  (Doc. 22).  The Amended Complaint was filed on November 27, 2019, mooting Defendant's pending motion to dismiss.  (Doc. 27).  The Court entered its Case Management and Scheduling Order on December 4, 2019.  (Doc. 29).  Shortly thereafter, on December 18, 2019 (*see* Doc. 33), Defendant filed its second potentially dispositive motion to dismiss (Doc. 33), raising a myriad of defenses, to which Plaintiffs filed their response on January 9, 2020.  (Doc. 37).

Defendant's Motion to Dismiss was fully briefed when COVID-19 stuck the nation, basically closing down the United States for the next few months. Closures impacted schools, workplaces and, of course, courts. As a result the virus facing the nation, on March 19, 2020, the Court entered an Order (*see* Doc. 46) staying all deadlines in this case, and all civil cases, until May 29, 2020.

During the pendency of the second stay, and armed with information obtained in discovery, counsel for both parties continued the settlement discussions. (Exhibit F, Hill Decl., ¶¶ 16-18). A second mediation was held on May 21, 2020, this time before a second mediator, R. Wayne Thorpe. At that second mediation the Parties reached a potential class-wide resolution for which they now seek the Court's approval.

### B.    Defendant's Defenses.

Defendant presented a myriad defenses to Plaintiffs' allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages and an Article III standing defense. Specifically, Defendant denied, and continues to deny, that it violated the 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiffs and/or any putative class members because the COBRA Notice complied with the notice requirements under ERISA. Furthermore, Defendant denies that Plaintiffs suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiffs are suitable for class treatment other than

for settlement purposes, and denies that it has any liability whatsoever.  However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

## II.     THE PROPOSED SETTLEMENT.

### A.     The Proposed Settlement Class.

The Settlement Agreement defines the proposed Settlement Class as follows: "All participants and beneficiaries in the Target Corporation Employee Umbrella Welfare Benefit Plan who were sent a required COBRA notice by Defendant, during the applicable four year statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage."  (referenced herein as the "Settlement Class").

### B.     Benefits to the Settlement Class and Named Plaintiffs.

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiffs and all Settlement Class Members in exchange for the Defendant's agreement to pay $1,600,000 to the

Settlement Fund.  The Parties negotiated the case on a common fund basis, meaning that the Settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and settlement administrative expenses.  The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund, and the class definitions, were agreed upon.

With the Settlement Class comprised of approximately 92,000 members, each Settlement Class Member will receive a net settlement payment of approximately $10.00 if the Court grants the amounts for attorneys' fees, administrative expenses, and Class Representative Service Awards. This is a "claims paid" Settlement, and is modeled after another deficient COBRA notice class action settlement approved by Judge Scriven in a case styled *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127). In fact, the per-class member recovery here is actually higher, despite the fact that this case involves class that is nearly four times as big. Like in *Vazquez*, Settlement Class Members do not have to submit claim forms to receive a share of the Settlement Fund. Rather, all Settlement Class Members will simply receive checks after the Effective Date of the Settlement. And also like in *Vazquez*, if Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

The Named Plaintiffs, Shawn Rigney and Kyle Adams, will each request court approval of an additional claim in the sum of $10,000 as a Service Award for the services provided to the Settlement Class in connection with the prosecution of this Action, in addition to the claim provided to each of them as a Settlement Class Member. This is the same service award amount approved by this Honorable Court in *Vazquez.*

The Settlement Agreement also provides that Plaintiffs' Counsel's fees, settlement administration costs and Service Award for the Named Plaintiffs are to come out of the Settlement Fund, subject to the Court's approval. Class Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees, plus reasonable litigation costs, just as in *Vazquez._* Neither settlement approval nor the size of the settlement fund are

contingent upon the full amount of any requested fees or class representative service award being approved.

### C. <u>Administration of Notice</u>.

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC, ("ALCS") to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Fund.

The Parties seek court approval of the agreed upon short form and long form Notices of Settlement to the Class Members, attached hereto as Exhibit C and Exhibit D. These forms are basically identical to those approved by this Court in *Vazquez*. Within ten (10) days of the Court's Preliminary Approval approving the Notices, the Settlement Administrator shall provide both Notices to Class Counsel and Defendant's Counsel. Within twenty (20) days of approval from the Parties, the Settlement Administrator shall mail the short form Notice of Settlement by U.S. mail to all Settlement Class Members. The short form Notice of Settlement shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class Members' eligibility to recover their pro-rata portion of the settlement proceeds, will inform them of their right to object or opt-out and how to do so, and will include the date, time, and location of the final fairness hearing scheduled by the Court.

The long form Notice of Settlement will inform Settlement Class Members of: (1) the material terms of the Settlement Agreement; (2) their right to object or opt-out how to do so; (3) that they will be bound by the Settlement Agreement; (4) an explanation of the "claims paid" process, as well as an explanation that settlement checks that are not timely cashed will

be made part of a donation to a *cy pres* recipient, Bay Area Legal Services; (5) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after the required CAFA notices have gone out); and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.  They are, again, meaningfully identical to those approved by this Court in *Vazquez.*

The Settlement Agreement provides that Settlement Class Members who choose to object to the settlement must do so within 60 days of the short form Notice of Settlement ailing date.   If the Court grants Final Approval of the settlement, Defendant will transfer the full amount of the Gross Settlement to the Settlement Administrator within ten (10) days of the Effective Date of the Settlement.  Settlement checks will be mailed to all Settlement Class Members within thirty (30) days after receipt by the Settlement Administrator of the Gross Settlement monies.  To the extent any money remains in the fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, such monies shall be paid as a *cy pres* donation to Bay Area Legal, subject to Court approval.

**D.      Attorneys' Fees and Expenses.**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the Gross Settlement as attorneys' fees. Class Counsel is also authorized to petition the Court for their reasonable litigation costs and any settlement administration expenses to be paid out of the Gross Settlement.  Class Counsel will file a separate motion seeking approval for fees and costs.  Defendant does not oppose the amount of fees and costs sought by Class Counsel for up to one third of the total fund, plus costs, just as in *Vazquez.*

### E. **Class Action Fairness Act Notice.**

The Settlement Administrator will cause notice of the proposed Settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").

## III. **PRELIMINARY CLASS CERTIFICATION.**

As part of Preliminary Approval of the Settlement, the Parties respectfully seek certification of the Settlement Class solely for the purposes of settlement only, as described here.

### A. **The Settlement Meets the Requirements of Rule 23(e) for Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v.*

*Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009); "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id*.  The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as

"the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir.

1984).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  This standard is satisfied here and the Court should enter an order Preliminarily Approving the Class Action Settlement Agreement.

### 1.    The Class representative and Class Counsel Have Adequately Represented the Class.

There is no question that Named Plaintiffs Shawn Rigney and Kyle Adams, along with Plaintiffs' counsel, have adequately represented the class.  This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, for purposes of settlement only, the adequacy-of-representation requirement has been met. The Named Plaintiffs, Shawn Rigney and Kyle Adams, are adequate given that their interests are equivalent to those of the Settlement Class. They have, at all times, been actively involved in this case. They participated in the drafting and reviewing of pleadings, including both the Complaint and Amended Complaint. Additionally, both participated in written discovery by responding to Defendant's interrogatories and requests for production. They were also involved in settlement by attending mediation. There is also no obvious conflict of interest between the Named Plaintiffs and the Settlement Class. They, along with their counsel, secured a $1,600,000 dollar settlement from a highly-sophisticated and well-represented Defendant in favor of the class members they seek to represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A., and Chad Justice of Justice for Justice. In fact, Judge Scriven recently appointed the above lawyers as class counsel in *Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127). Judge Scriven also appointed Messrs. Cabassa and Hill as class counsel in *Kohler v. SWF Operations, LLC*, M.D. Fla. Case No.: 8:14-cv-02568-MSS-TGW (July 5, 2016) (Doc. 54).

Additionally, the undersigned have been appointed as class counsel in multiple COBRA class action cases, including most recently in *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersigned as class counsel in a COBRA notice class action),

and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2.    The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations during the period of time after significant discovery, motion practice, and only after two separate mediation sessions. Indeed, the settlement was negotiated at arm's length between Lead Counsel and counsel for Defendant, and was ultimately the result of a second mediation before a class-action mediator. *See D'Amato v.*

*Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length negotiations between the Parties and their counsel. The Parties first participated in mediation early in the litigation in October of 2019, engaged in exhaustive written discovery efforts, fully briefed a potentially dispositive motion, and then, at great expense, engaged a second, highly-reputable class action mediator in further effort to resolve this case. That second mediation was successful. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

In sum, the attorneys who conducted the negotiations for the Settlement Class have years of experience in conducting complex class action litigation, and were thoroughly

conversant with the strengths and weaknesses of the case. Counsel's decision on settlement should be given great deference.  This also weighs in favor of approval.  *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.")

        **3.**        **The Settlement Provides Significant Relief to Class Members.**

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendant to pay $1,600,000 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $17.40 per Settlement Class Member, with a net recovery after attorneys' fees and costs, administrative expenses, and a Service Award, of approximately $10.00. This falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).  The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on

the merits.  Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."  *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiffs and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency.  *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad

faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiffs being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Likewise, Plaintiffs had not yet obtained class certification, the Court had not yet ruled on Defendant's potentially dispositive motion to dismiss, and summary judgment had not been briefed. Each of these phases of litigation presented serious risks, which the Settlement allows Named Plaintiffs and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit

go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiffs support the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Notices of Settlement.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 92,000 participants, each Settlement Class Member will receive a gross settlement payment of $17.40 with a net settlement payment if the Court awards attorneys' fees and expenses, administrative costs and a Service Award, of approximately $10.00. This a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class

Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome was far from guaranteed. As discussed below, Plaintiffs faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiffs proved Defendant violated the COBRA-notice regulation, Plaintiffs and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiffs overcame Defendant's motion to dismiss and potential summary judgment motion, won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed any final adverse judgment, meaning Plaintiffs would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

5. **The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

## IV. **The Proposed Notice of Settlement Is Reasonable.**

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

Under the Settlement, each Settlement Class Member will be sent a Short Form Notice of Settlement via U.S. First-Class Mail in the form of a postcard, informing them of the terms of the Settlement and their right to object or opt-out, subject to Court approval in its Preliminary Approval Order of both Notices of Settlement. The short form Notice of Settlement will direct

the Settlement Class Members to the Settlement Administrator's website where additional information will be provided, along with a 1-800 informational number and call center.  The content of the long form Notice of Settlement is also reasonable and appropriate. Under Rule 23(c)(2)(B), notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices of Settlement include all of this information.   In addition, the Notices of Settlement clearly spell out the terms of the proposed Settlement, provide a website address where Settlement Class Members can obtain a copy of the Settlement Agreement and other relevant documents, and include a phone number that they may call if they have any questions. Accordingly, this Court should approve both the Short Form and the Long Form Notice of Settlement, as both the content of the notices and the methods of dissemination are reasonable.

**V.**    **Class Certification Is Appropriate Under Rule 23(a) for Settlement Purposes.**

In addition to approving the proposed Settlement and Notice of Settlement, this Court should also certify the proposed Settlement Class for settlement purposes only, under Fed.R.Civ.P. 23(a). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival*

*Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted). Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).

However, in the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis.

*See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League,* 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.,* 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### A.    The Requirements of Rule 23(a) are Met.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiffs have satisfied all four requirements, for purposes of settlement only, as set forth below.

#### 1.    Numerosity.

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are approximately 92,000 Settlement Class Members. Thus, for purposes of settlement only, the

numerosity standard is easily satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

## 2.   **Commonality.**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).

"The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted). Here, there are common issues regarding (among other things): (1) whether Defendant violated COBRA's notice requirements; (2) whether any such violation was willful or the result of bad faith; and (3) whether and to what extent statutory penalties are appropriate. These common issues support certification of the proposed Settlement Class for settlement purposes only. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices

"as applied to the entire class"); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist LEXIS 6235, at *5 (M.D. Ala. Jan. 16, 2013) (finding commonality satisfied and certifying COBRA notice class for settlement purposes).

3. **Typicality.**

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.,* 275 F.R.D. at *3 n.8 (citation omitted). Typicality is satisfied where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiffs are typical of the Settlement Class that they seek to represent, as they, like the putative class members, were sent a COBRA Notice on behalf of Target, and their claims stem from that COBRA Notice. Accordingly, for settlement purposes only, Rule 23(a)(3) is also satisfied. *See Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

4. **Adequacy.**

The requirement of adequate representation addresses two issues: (1) whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673. Here, Plaintiffs' counsel have extensive experience litigating class action cases, including COBRA notice cases. *See generally* Declarations of Luis A. Cabassa (Exhibit E), Brandon J. Hill (attached as Exhibit F), and Chad A. Justice (Exhibit G). Moreover, "[t]here is nothing to indicate that [Plaintiffs'] interests are in conflict

24

with any members of the class." *Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000). To the contrary, Plaintiffs "share common interests with the class members and seek[s] the same type of relief[.]" *In re Checking Account Overdraft Litig.,* 275 F.R.D. at *7. Accordingly, for settlement purposes only, the adequacy requirement is also met.

### B.    The Requirements of Rule 23(b)(3) Are Also Met.

In addition to satisfying Rule 23(a), Plaintiffs must also satisfy Rule 23(b)(3). Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class in this case meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because, for purposes of settlement only, common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1.    Predominance.

Predominance is governed by an analysis of whether liability may be resolved on a class- wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate for settlement purposes only. The central common issues in this case concern a standardized COBRA Notice that was common

to all Settlement Class members as all class members are believed to have received the same COBRA Notice as to the content that Plaintiffs claim was not legally compliant. Moreover, common questions of law and fact pertain to whether Defendant should be required pay statutory penalties for utilizing that particular notice. *See, e.g., Slipchenko v. Brunel Energy, Inc.*, 2013 U.S. Dist. LEXIS 124159 (S.D. Tex. Aug. 30, 2013) (COBRA case finding common issues predominated).

## 2. **Superiority.**

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for individual members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20 ("Given the small amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011).  Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Indeed, the Settlement Class members who received Defendant's COBRA Notice are unlikely to be aware that their rights may have been violated, and are therefore unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection, LLC*, 250 F.R.D. 366, 374 (N.D. Ill. 2008) (finding class action superior method of litigation where class members might not be aware that they have legal claims).  Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties, which may not be awarded), it is unlikely that class members would pursue their claims.  And, even if Settlement Class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).  Thus, a class action is superior to other available methods for fairly and efficiently adjudicating this dispute and, for settlement purposes only, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met.

## IV.    <u>CONCLUSION.</u>

For the foregoing reasons, Named Plaintiffs Shawn Rigney and Kyle Adams respectfully request that the Court enter the attached proposed Preliminary Approval Order (*see* Exhibit A) and (a) certify the Settlement Class for Settlement purposes only; (b) appoint Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel for Settlement purposes; (c) authorize distribution of the Notice of Settlement to the Settlement Class; (d) set a Deadline to Object or Opt-Out; and (e) set a date for a Final Approval Hearing, not to occur until at least one hundred and twenty (120) days after entry of the Court's Preliminary Approval Order.

### <u>CERTIFICATE OF GOOD FAITH</u>

Plaintiffs' Counsel certifies that in conformance with Local Rule 3.01(g) he conferred with Defendant's Counsel about the issues raised in Plaintiffs' Motion. Defendant does not oppose the relief requested herein.

DATED this 14th day of July, 2020.     Respectfully submitted,

*/s/Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
*Attorneys for Plaintiffs*

and

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE FOR JUSTICE LLC**
1205 N Franklin St., Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com
*Co-counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 14th day of June, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/Brandon J. Hill*
**BRANDON J. HILL**