# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**SHAWN RIGNEY and KYLE ADAMS,**
**individually and on behalf of all others**
**similarly-situated,**

     **Plaintiffs,**

**v.**                                  **CASE NO.: 8:19-cv-01432-T-35JSS**

**TARGET CORPORATION,**

     **Defendant.**

_____/

### UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

The Class Representatives, Shawn Rigney and Kyle Adams ("Plaintiffs"), pursuant to Fed.R.Civ.P. 23, file this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1]  On August 4, 2020, this Honorable Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the COBRA claims asserted against Defendant. (*See* Doc. 50).  Notice was sent to 92,000+ Settlement Class Members and the reaction to the Settlement is overwhelmingly positive.  To date, not a single objection has been made to the Settlement.

In sum, little has changed since the Court's Order granting the Plaintiffs' Motions for preliminary approval of the same Settlement, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiffs request that the Court enter the

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on July 14, 2020. (*See* Doc. 49-2).

Final Approval Order attached as Exhibit A.  In further support thereof, Plaintiffs states as follows:

## I.     BACKGROUND AND OVERVIEW OF SETTLEMENT.

### A.     Overview of Motion and Current Posture of the Case.

On August 4, 2020, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiffs, on behalf of the Settlement Class, and Defendant. (Doc. 50).  In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id*. at ¶ 14). Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and thus far, zero have objected to the Settlement. And so far less than .04% of the 92,000 class members have asked to be excluded.  Thus, the reaction by the Class Members has been overwhelmingly positive.  The claims period and objection deadline expires on November 17, 2020.  The hearing on final approval is set for November 19, 2020.

### B.     Nature of Plaintiffs' Claim.

This is a putative class action brought by Plaintiffs against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  The lawsuit generally alleges Defendant provided Plaintiffs and other class members with a deficient COBRA Notice.  More specifically, Plaintiffs asserted that Defendant's COBRA Notice did not adequately inform them of how to exercise their rights to elect COBRA coverage.  In violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. the Notice failed to: (i) adequately explain the procedures for electing coverage; (ii) properly include an address indicating where COBRA payments should be mailed; (iii) identify the Plan Administrator; and, finally, (iv) was not written in a manner

calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Plaintiffs sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of themselves and all others similarly situated.

**C.     Target's Defenses.**

Defendant presented a myriad defenses to Plaintiffs' allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages and an Article III standing defense. Specifically, Defendant denied, and continues to deny, that it violated the 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiffs and/or any putative class members because the COBRA Notice complied with the notice requirements under ERISA. Furthermore, Defendant denies that Plaintiffs suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiffs are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

**D.     Mediation and Settlement.**

The Parties participated in two full-day mediations, one on October 8, 2019, conducted by mediator Hunter R. Hughes, and another on May 21, 2020, conducted by mediator R.

Wayne Thorpe. During the May 21, 2020 first mediation, the Parties reached an agreement in principle which was memorialized in a term sheet. Pursuant to their agreement, the Parties entered into a Class Action Settlement Agreement and Release, which memorializes in full the terms of the Parties' amicable resolution of this case.

The Settlement Agreement, if granted final approval, will resolve all claims of the Named Plaintiffs and all Settlement Class Members in exchange for the Defendant's agreement to pay $1,600,000.00 to the Settlement Fund.  The Parties negotiated the case on a common fund basis, meaning that the Settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and settlement administrative expenses.  The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund, and the class definitions, were agreed upon.

With the Settlement Class comprised of approximately 92,000 members, each Settlement Class Member will receive a net settlement payment of approximately $10.00 if the Court grants the amounts for attorneys' fees, administrative expenses, and Class Representative Service Awards.

Importantly, this is a "claims paid" Settlement, and is modeled after another deficient COBRA  notice class action settlement approved by Judge Scriven in a case styled *Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127).  In fact, the per-class member recovery here is actually higher, despite the fact that this case involves class that is nearly four times as big.  Like in *Vazquez*, Settlement Class Members do not have to submit claim forms to receive a share of the Settlement Fund.  Rather, all Settlement Class Members will simply receive checks after the Effective Date of the

Settlement. And also like in *Vazquez*, if Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

The Settlement Agreement also provides that Plaintiffs' Counsel's fees, settlement administration costs and Service Award for the Named Plaintiffs are to come out of the Settlement Fund, subject to the Court's approval. Class Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees, plus reasonable litigation costs, just as in *Vazquez*. Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees or class representative service award being approved.

**E.     The Court's Order granting Preliminary Approval of the Settlement.**

On August 4, 2020, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiffs, on behalf of the Settlement Class, and Defendant. (Doc. 28.) In that Order, the Court found that the settlement terms are "fair, reasonable, and adequate." (*Id.* at ¶ 14.) Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the approximately 92,000+ Settlement Class Members.

**F.     The Class Member's Reactions to the Settlement.**

As set forth herein, the Settlement Class Members' response to the Notice of Settlement confirms that the Court's preliminary analysis was correct. The Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members

and **<u>zero</u>** objected to the Settlement thus far. And so far less than .04% of the 92,000 class members have asked to be excluded.

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on or around September 18, 2020, via first-class mail. A total of over 92,000 Class Notices were mailed to members of the Settlement Class. (*See* Declaration of Jeffrey Pirrung from ALCS, ¶ 4) (hereinafter "Pirrung Dec.").

The Class Notice provided Settlement Class Members with all required information relating to the Settlement including: (1) a summary of the lawsuit and an overview of the nature of the claims; (2) the definition of the Settlement Class certified by the Court; (3) a clear description of the material terms of the Settlement; (4) an explanation of the claims being released; (5) an explanation of Settlement Class Members' rights; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the final approval hearing; (8) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; (9) identification of Class Counsel and information regarding the compensation that they would seek pursuant to the Settlement Agreement; and, (10) identification of the Class Representative and information regarding the Service Award she would seek pursuant to the Settlement Agreement.

The Settlement website provided Settlement Class Members with access to the following documents: (i) the Long Form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and

Release, with exhibits; (vi) Joint Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order. The Long Form of Notice included a set of Frequently Asked Questions ("FAQs") and answers about the Settlement.

ALCS also set up a toll-free telephone support line that Settlement Class Members could call to obtain additional information. Thus, Notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval. The Settlement Class Members overwhelmingly accepted the Settlement. It is estimated that over 91,000 Settlement Class Members received the Class Notice and none have objected as of the date this Motion was filed.

**G.    <u>Specific Settlement Terms</u>.**

For the reasons set forth below, the Settlement is fair, reasonable and adequate. More specifically,

a.    The Settlement was vigorously negotiated at arm's length with the assistance of two separate Mediators and only after the Parties had conducted significant discovery and engaged in substantive motion practice;

b.    Unclaimed Settlement Funds will <u>not</u> revert to Defendant. The Settlement Agreement provides for unclaimed funds (uncashed checks and those sent but returned for which no available forwarding address can be located) will revert to the Bay Area Legal Services, as a *cy pres* recipient, subject to Court approval;

c.     The Settlement provides for immediate monetary relief, specifically a $17.40 gross recovery and $10.00 net payment, which are well-within the range of similar COBRA Notice class action settlements;[2]

d.     The Settlement is not contingent upon the Court's approval of Class Counsel's attorneys' fees or costs, or any Service Award to the Named Plaintiffs;

e.     The Class Release in the Settlement Agreement is narrowly-tailored to apply only to claims like those asserted in the lawsuit;

f.     The Settlement Agreement provided for direct Notice to Settlement Class Members via U.S. First-Class Mail;

g.     Settlement Class Members were not required to file claim forms in order to receive Settlement checks, making this a "claims paid" Settlement;

h.     The Settlement Fund created by Defendant will be a fully-funded common fund;

i.     The Settlement provided the opportunity for potential Settlement Class Members to object to the Settlement within sixty (60) days of Notice being mailed (none have objected thus far);

j.     If any Settlement Class Members fail to tender their Settlement Payment checks within the period provided in the Settlement Agreement, any funds remaining in

---

[2] *See, e.g.*, *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32) and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

the Settlement Account (after deduction for all Court approved deductions) will revert and be paid exclusively to Bay Area Legal Services, upon Court approval.

k.        Shawn Rigney and Kyle Adams are both entitled to seek a $10,000.00 service award.

**H.        Proposed Final Nationwide Settlement Class.**

The Settlement Agreement calls for final certification, for settlement purposes only, of a nationwide Settlement Class defined as follows:

> All participants or beneficiaries in the Target Corporation Employee Umbrella Welfare Benefit Plan who were sent a required COBRA notice by or on behalf of Defendant any time during the Class Period described herein as a result of a qualifying event, as determined by Defendant's records, who did not elect continuation coverage.

> The Class Period is defined as the period of time from May 1, 2015 to May 31, 2019.

There are approximately 92,000 members of the "Settlement Class."

**I.        The Settlement Provides for Adequate Relief.**

Provided final approval is granted by the Court, Defendant has agreed to fund a common fund in the amount of $1,600,000.00, which will be used to compensate Settlement Class Members on a *pro rata* portion of the Settlement Fund.  This amount includes the anticipated amount that Defendant would pay if every Settlement Class Member participated in the Settlement and received a Settlement payment, class counsel's fees, costs and expenses, Settlement administration expenses, and a Service Award.

The net proceeds of the Settlement Fund will be distributed evenly among all Settlement Class Members on a *pro rata* basis and will be received on a claims paid basis

without the need to fill out, or submit, a claim form.  The gross payment per Settlement Class Member is approximately $17.40 per Settlement Class Member ($1,600,000.00 ÷ 92,000 = $17.39). If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service Award, the parties anticipate that each Settlement Class Member will receive a pro rata net payment of approximately $10.00.[3]  Given the size of the class, this net amount is consistent with COBRA class action settlements that have been approved by other federal courts.  The Settlement Administrator will send a Settlement Payment by U.S. Mail to each Settlement Class Member.

**J.**     **Notice of Settlement, Claims Process, and Settlement Administration.**

The Parties utilized a private, third-party vendor, to administer Class Notice in this case. The Parties have also agreed that all expenses, including fees charged by the Administrator shall be paid from the Settlement Fund.

**K.**     **Attorneys' Fees and Costs, Administration Expenses, and Service Awards.**

Pursuant to the Settlement Agreement, Class Counsel is entitled to petition the Court for up to up to one-third of the total Settlement amount, plus costs, a request Defendant does not oppose.  Neither Settlement approval, nor the size of the Settlement Fund, is contingent upon the full amount of any requested fees or costs being approved.    Additionally, administrative expenses are also to be paid out of the common fund.  And, both Named Plaintiffs are entitled to each seek a $10,000.00 service award (addressed below in Section III).

---

[3] ($1,600.000.00 - $533,333.33 (attorneys' fees) - $17,045.52 (litigation costs) - $153,401 (administration costs) - $20,000 (service awards) = $876,220.15 / 92,000 = $9.52 net payment per class member.

## II.    THE PROPOSED CLASS HAS BEEN CERTIFIED
## AND THE NOTICE PLAN APPROVED.

**A.    The Class Has Already Been Certified on a Preliminary Basis.**

The Court has already determined this action was proper for resolution on a class wide basis, for settlement purposes only, pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 50).  Since the Court's Preliminary Approval Order, no objections addressing class certification were received.  Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

**B.    Notice to the Class under Fed.R.Civ.P. 23(e)(1).**

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class.  As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by send out the Court-approved short form version of the notice to all 92,000 class members via U.S. Mail.  That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number along with all of the other required information.  (*See* Declaration of Jeffrey Pirrung from ALCS, ¶ 4) (hereinafter "Pirrung Dec.").   Thus, notice was sufficient.

**C.**     **Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter a Final Order approving the Class Action Settlement Agreement.

**1.**     **The Class representative and Class Counsel Have Adequately Represented the Class.**

There is no question that Shawn Rigney and Kyle Adams and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiffs, Shawn Rigney and Kyle Adams, are adequate given that their interests are equivalent to those of the Settlement Class. They were actively involved in this case from its inception. They participated in written discovery and also in the two mediations. Furthermore, there is also no obvious conflict of interest between the Named Plaintiffs and the Settlement Class. The Named Plaintiffs have the same interest as the Settlement Class Members in prosecuting their claims. They, along with their counsel, secured a $1,600,000.00 dollar settlement from a highly-sophisticated Defendant in favor of the class members they represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations of the undersigned.  In fact, Judge Scriven previously appointed the undersigned as class counsel in *Kohler v. SWF Operations, LLC,* M.D. Fla. Case No.: 8:14-cv-02568-MSS-TGW (July 5, 2016) (Doc. 54), and also in *Vazquez v. Marriott International, Inc.,* M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF (appointed as class counsel in COBRA class action case involving over 19,000 class members).

Additionally, the undersigned have been appointed as class counsel in several other COBRA class action cases, including most recently in *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34).  *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.  *Thacker v. Chesapeake Appalachia, L.L.C*., 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co*., 2008 WL 4104329 at *26 (E.D. Mich. August

29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before Two Neutral Mediators.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations during the period of time after significant discovery and motion practice. This also weighs in favor of approval. *See Gevaerts v. TD Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past."). Not only that, the Parties used two separate highly-respected mediators in this case. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator").

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the

strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3.    The Settlement Provides Adequate Relief to the Class Members.

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor. The Settlement requires Defendant to pay $1,600,000.00 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $17.50 per Settlement Class Member, with a net recovery after attorneys' fees and costs, administrative expenses, and a Service Award, of approximately $10.00.[4]  This recovery falls well within the range of reasonableness for settlement purposes. *See e.g., Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc*., Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018)

---

[4]($1,600.000.00 - $533,333.33 (attorneys' fees) - $17,045.52 (litigation costs) - $153,401 (administration costs) - $20,000 (two service awards) = $876,220.15 / 92,000 = $9.52 net payment per class member.

(court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

Notably, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a Settlement Payment. In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced

counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiffs and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiffs being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. The Parties engaged in significant discovery, engaged in significant motion practice, and even completed two separate mediation sessions. Each of these phases of litigation presented serious risks, which the Settlement allows Named Plaintiffs and the Settlement Class to avoid. *See, e.g. In re*

*Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiffs also support the Settlement as do the Class Members— evidenced by the lack of objections and low exclusion rate.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 92,000 participants, each Settlement Class Member will receive a gross settlement payment of $17.40 with a net settlement payment if the Court awards

attorneys' fees and expenses, administrative costs and a Service Award, of approximately $10.00. This a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome was far from guaranteed. As discussed below, Plaintiffs faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiffs were able to prove that Defendant violated the COBRA-notice regulation, Plaintiffs and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiffs overcame Defendant's summary judgment motion, successfully had the case certified by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiffs would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class

Members.   *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all.   Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay.   Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

### D.    The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have at Doc. 49-2, the settlement agreement for which they seek final approval.   Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object.   And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made.   Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

### III.    THE SERVICE AWARDS TO PLAINTIFFS SHOULD BE APPROVED.

Finally, the Court should approve the $10,000 service awards sought by Shawn Rigney and Kyle Adams.  Both are in line with the $10,000 service award by this Court awarded in *Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127, p. 2, ¶ 2(b)).

Plaintiffs recognize that recently some District Courts have expressed concerns about service awards due to the Eleventh Circuit's recent holding in *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).  However, Plaintiffs respectfully submit that *Johnson* does not prohibit the service awards sought in this case.

First, the mandate from *Johnson* has not issued and, thus, *Johnson* is not binding.  The *Johnson* decision was issued on September 17, 2020, and pursuant to Fed.R.App.P. 41, the mandate would have issued seven days later.   However, motions were filed by Plaintiff/Appellee Charles T. Johnson on September 25, 2020 and Appellant Jenna Dickenson on September 29, 2020 seeking to stay the mandate while the parties petition the Court for rehearing and/or rehearing en banc. On September 28, 2020, and September 30, 2020, respectively, the Eleventh Circuit extended the time to rehearing. As a result, the mandate has not issued. Before the mandate issues, the case is not binding. *See In the matter of In re Ghandtchi*, 705 F.2d 1315, 1316 (11th Cir. May 26, 1983).

Second, unlike in *Johnson*, here the Service Awards are -- at least thus far -- not opposed.  Indeed, over 92,000 people were informed about the Service Awards.  To date not a single objection has been received as to either service award.

Finally, the Parties entered into the settlement agreement before the *Johnson* opinion came out. Thus, it would be unfair to Mr. Rigney and Mr. Adams to preclude them from receiving the service awards for which they are eligible to receive under the Parties' agreement. Not only that, the Court granted preliminary approval of the settlement on August 4, 2020, almost 1.5 months before *Johnson* was published. Thus, *Johnson* should not undo an already-preliminarily approved service award to either Named Plaintiff, particularly when the service awards are unopposed by the Defendant and the class members. For these reasons Plaintiffs Shawn Rigney and Kyle Adams respectfully ask that this Honorable Court permit them to receive the agreed-upon $10,000 service awards.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## V.    CERTIFICATE OF GOOD FAITH.

In good faith, Plaintiffs' counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiffs' Motion. Defendant does not oppose the relief requested herein.

DATED this 9th day of November, 2020.

Respectfully submitted,

*/s/Brandon J. Hill*

**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

**and**

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE FOR JUSTICE LLC**
1205 N. Franklin Street, Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com

*Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 9th day of November, 2020, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Brandon J. Hill*        
**BRANDON J. HILL**
